# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-2245

_____

United States of America,　　　　　　*
　　　　　　　　　　　　　　　　　　*
　　　　　　　Appellee,　　　　　　　*
　　　　　　　　　　　　　　　　　　*　Appeal from the United States
　　　v.　　　　　　　　　　　　　　*　District Court for the District
　　　　　　　　　　　　　　　　　　*　of North Dakota.
Glen White Bull,　　　　　　　　　　*
　　　　　　　　　　　　　　　　　　*
　　　　　　　Appellant.　　　　　　 *

_____

Submitted:  February 15, 2011
Filed:  July 26, 2011

_____

Before LOKEN, MELLOY, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

A jury convicted Glen White Bull of five counts of aggravated sexual abuse under 18 U.S.C. § 2241(c).  The district court sentenced White Bull to concurrent sentences of 360 months imprisonment for each count.  White Bull appeals, claiming the district court committed numerous trial and sentencing errors.  We affirm in part, reverse in part, and remand with instructions.

We recite the facts in the light most favorable to the jury's verdict. Beginning in 2005, White Bull lived in a home on the Standing Rock Indian Reservation in Fort Yates, North Dakota, with his girlfriend, Danielle Plenty Chief. Plenty Chief's children also lived in the home, including the victim of the convicted offenses, S.C.G.1.

On March 9, 2009, White Bull and Plenty Chief were married. The morning after the wedding, Plenty Chief awoke in her bedroom and could not find White Bull. Plenty Chief then asked one of her children, S.C.G.2., to look for White Bull. Eventually, S.C.G.2. walked into the basement of the Fort Yates home, where she observed S.C.G.1., who was nine years old at the time, lying on the floor with White Bull on top of her. S.C.G.1.'s pants were "by her knees," and White Bull was leaning over her with his pants "below his thighs somewhere." S.C.G.1. testified that during this incident, her pants and underwear were down and that White Bull was touching her "private part."

After S.C.G.2. discovered White Bull with S.C.G.1., she immediately took S.C.G.1. to Plenty Chief's bedroom to explain what she had seen. White Bull followed, and when Plenty Chief asked him what had happened, he denied having been in the basement with S.C.G.1. At some point during the discussion in the bedroom, S.G.C.1. said, "Mom. This wasn't the first time." Neither Plenty Chief nor anyone else in the Fort Yates home called the police that morning and White Bull continued to live with Plenty Chief and her children.

On April 26, 2009, Plenty Chief again asked White Bull about the incident with S.C.G.1. This discussion led to a physical altercation, and Plenty Chief called the police. After the police arrived, Plenty Chief told them about the March 10 incident.

Three days later, Paula Condol, a forensic interviewer at the Dakota Children's Advocacy Center in Bismark, North Dakota, interviewed S.C.G.1 regarding the allegations of sexual abuse. During this interview, S.C.G.1. wrote on a sheet of paper that "it happen [sic] when we went horse riding and on the weit [sic] bench 3 times and on the floor in the basement." S.C.G.1. also circled the genital area of a gender-neutral body diagram to indicate where White Bull had touched her. The Government then filed an indictment against White Bull, charging him with five counts of aggravated sexual abuse of a child which represented the five separate incidents described by S.C.G.1. After a two-day trial, the jury returned a guilty verdict for each of the five counts.

## II.

White Bull claims the district court committed trial error by: 1) denying his motion for judgment of acquittal based on insufficient evidence; 2) admitting prejudicial hearsay testimony; and 3) failing to conduct an evidentiary hearing into possible juror misconduct.

## A.

White Bull argues that the evidence at trial was insufficient to convict him of five counts of aggravated sexual abuse under section 2241(c). We review the denial of a motion for a judgment of acquittal under a de novo standard of review. United States v. Espinosa, 585 F.3d 418, 423 (8th Cir. 2009). "In reviewing for sufficiency of the evidence, we view the evidence in the light most favorable to the verdict, and we will 'overturn a conviction only if no reasonable jury could have concluded that the defendant was guilty beyond a reasonable doubt on each essential element of the charge.'" United States v. Kenyon, 397 F.3d 1071, 1076 (8th Cir. 2005) (quotation omitted). Moreover, we consider "the same quantum of evidence" that was presented at trial, even if some of the evidence was improperly admitted. Id. (quoting Lockhart

v. Nelson, 488 U.S. 33, 40-42 (1988)); see also United States v. Peneaux, 432 F.3d 882, 889 (8th Cir. 2005). Finally, "we note that a victim's testimony alone can be sufficient to prove aggravated sexual abuse." United States v. DeCoteau, 630 F.3d 1091, 1097 (8th Cir. 2011).

An individual violates section 2241(c) if he or she "knowingly engages in a sexual act with another person who has not attained the age of 12 years . . . or attempts to do so." 18 U.S.C. § 2241(c). The statute defines a "sexual act" to include "contact between the penis and vulva" which "occurs upon penetration, however slight" as well as "the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." 18 U.S.C. § 2246(2)(A), (D).

In this case, the jury did not specify whether it found White Bull guilty of "knowingly engaging in a sexual act" or merely attempting to do so. As a result, we may uphold the verdict if the evidence is sufficient to support White Bull's conviction under either theory. See United States v. Papakee, 573 F.3d 569, 574 (8th Cir. 2009).

1.

Count 5 of the indictment alleged that White Bull committed aggravated sexual abuse on March 10, 2009, in the basement of the Fort Yates home. White Bull argues that the evidence to support his conviction for count 5 was insufficient because the evidence of actual or attempted touching, not through the clothing, of S.C.G.1.'s genitalia was conflicting and not anatomically specific enough to support his conviction.[1]

---

[1] White Bull also argues that the evidence at trial was insufficient to support a conviction for count 5 because there was no evidence of actual or attempted penetration. But because evidence of attempted or actual touching, not through the

-4-

White Bull's first contention—that the evidence at trial was insufficient for a conviction of aggravated sexual abuse because it was conflicting—can be quickly dismissed. At trial, S.C.G.1. testified that her clothes were "on all the way" while she was lying down on the floor of the basement and White Bull was touching her with his "middle." A few questions later, however, S.C.G.1. said that her pants and her underwear were down at this time. S.C.G.1. further testified that while her pants and underwear were down, White Bull was touching her "private part."

Even assuming this testimony is inconsistent, it can still constitute sufficient evidence to support White Bull's conviction for count 5. See United States v. Lohnes, 554 F.3d 1166, 1169 (8th Cir. 2009); Kenyon, 397 F.3d at 1076. "[I]t is for the jury to resolve conflicting evidence and make credibility determinations, determinations that are 'virtually unreviewable on appeal.'" Lohnes, 554 F.3d at 1169 (quoting United States v. Johnson, 519 F.3d 816, 822 (8th Cir. 2008)).

White Bull's contention regarding the anatomic specificity of the evidence with respect to count 5 also fails. For this argument, White Bull points to our decisions in United States v. Plenty Arrows, 946 F.2d 62 (8th Cir. 1991) and United States v. Reddest, 512 F.3d 1067 (8th Cir. 2008). Both Reddest and Plenty Arrows can be distinguished, however, because in those cases the Government was required to show actual penetration to support a conviction for aggravated sexual abuse. Evidence of penetration was necessary in Plenty Arrows because in 1991, the term "sexual act" was defined more narrowly and required "penetration or contact with the mouth." United States v. Wright, 540 F.3d 833, 840 (8th Cir. 2008); see also 18 U.S.C. § 2245(2) (1991). In Reddest, evidence of penetration was necessary because the indictment specifically alleged that the defendant had committed aggravated sexual abuse through "penetration of the genital opening by the finger." 512 F.3d at 1071.

---

clothing, of the genitalia is sufficient to uphold the conviction, 18 U.S.C. § 2246(2)(A), (D), White Bull's contention is meritless.

After concluding that the "evidence [was] insufficient to prove penetration of the genital opening," we held that the conviction could not be upheld "[u]nder the terms of the statutory provision charged by the Government." Id. at 1072; see also id. at 1073 (refusing to consider whether there was sufficient evidence to show "intentional touching, not through the clothing, of the genitalia of another person" because it contradicted the indictment's allegations and the submitted jury instructions).

Unlike Reddest or Plenty Arrows, the Government in this case was not required to present evidence of actual penetration in order to show White Bull committed a "sexual act." As mentioned earlier, the operative definition of a "sexual act" now includes not only actual or attempted penetration but also "the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." 18 U.S.C. § 2246(2)(D). Count 5 of the indictment presented against White Bull did not specifically allege that White Bull had actually penetrated S.C.G.1.'s vulva. Rather, the indictment claimed that White Bull:

> did knowingly engage in and attempt to engage in a sexual act with a person who had not attained the age of twelve years . . . and the sexual act consisted of (a) contact between the penis and the vulva, and (b) the intentional touching, not through the clothing, of the genitalia of a person who had not attained the age of sixteen years.

Looking to the evidence in this case, we conclude that there was sufficient evidence presented to allow a reasonable jury to at least reach the conclusion that White Bull touched S.C.G.1.'s genitalia, not through the clothing, with the requisite intent.

S.C.G.1. testified that White Bull touched her "private part" and her "middle" while her pants and underwear were down. In addition, S.C.G.1. drew a circle on a figure around the area where the torso meets the legs to indicate what she meant by her "private part." S.C.G.2. corroborated S.C.G.1's account by stating that when she

-6-

went in the basement that night, she "saw S.C.G.1 laying on the floor on a blanket . . . and [White Bull] was on top of her." S.C.G.2. also testified that S.C.G.1.'s pants were down "by her knees" while White Bull was "leaning over her and he had his pants down . . . just below his thighs somewhere."

White Bull nevertheless argues that because S.C.G.1. drew a circle on a gender-neutral figure to indicate what she meant by the terms "private part" and "middle," it was unclear whether she was referring to the "groin, lower abdomen, anus, vulva, thighs, or some other part of her anatomy." But this argument is meritless. The question in a sufficiency-of-the-evidence challenge is not whether a reasonable jury could possibly conceive of an alternative interpretation of the evidence at trial. Instead, we ask whether *any* reasonable jury *could have* concluded that this evidence shows that White Bull touched, not through the clothing, S.C.G.1.'s genitalia. Papakee, 573 F.3d at 574; Kenyon, 397 F.3d at 1076.

A reasonable jury could also have found that the evidence showed that White Bull touched S.C.G.1.'s genitalia "with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." Although the Government did not submit any direct evidence to prove White Bull's intent, such intent can be inferred from the obviously sexual nature of the contact. See United States v. Lee, 232 F.3d 653, 655-56 (8th Cir. 2000). Viewing this evidence in its entirety, we conclude that a reasonable jury could find that White Bull touched, not through the clothing, S.C.G.1.'s genitalia with the necessary intent to constitute a "sexual act" as defined by 18 U.S.C. § 2246(2)(D). See Kenyon, 397 F.3d at 1076-78.

We therefore affirm the district court's denial of White Bull's motion for acquittal with respect to count 5.

Counts 1 through 4 of the indictment charged White Bull with aggravated sexual abuse stemming from four other occasions: three times on a weight bench in the Fort Yates home and once while horseback riding. For these counts, White Bull claims the Government failed to present sufficient evidence of actual or attempted penetration or actual or attempted touching, not through the clothing, of S.C.G.1.'s genitalia.

The primary evidence supporting the convictions for counts 1 through 4 is the testimony of S.C.G.1. Although a victim's testimony alone may constitute sufficient evidence of aggravated sexual abuse, DeCoteau, 630 F.3d at 1097, the testimony must still be sufficient to permit a reasonable jury to find the defendant guilty beyond a reasonable doubt "on each essential element of the charge," Kenyon, 397 F.3d at 1076 (quotation omitted).

S.C.G.1.'s testimony for the three counts involving abuse on the weight bench provides little support for a conviction of aggravated sexual abuse. The Government's questions regarding these three counts pertain only to the location and physical description of the weight bench itself rather than to the alleged criminal actions of White Bull. S.C.G.1.'s testimony describing the alleged abuse that occurred while horseback riding was also imprecise. S.C.G.1. testified that on this occasion, White Bull did something bad to her with his "middle" or his "private." As previously mentioned, S.C.G.1. indicated what she meant by "middle" or "private" by drawing a circle on a gender-neutral figure around the area where the legs meet the torso. But when the Government asked where White Bull touched her with his "middle" during this horseback riding incident, S.C.G.1. responded that she could not remember.

Even when construed in the light most favorable to the verdict, the evidence with respect to counts 1 through 4 is insufficient to allow a reasonable jury to

conclude that White Bull committed aggravated sexual abuse against S.C.G.1. on these four separate occasions. As listed in the indictment, counts 1 through 4 allege that White Bull committed a sexual act with S.C.G.1. through:

> (a) contact between the penis and the vulva, and (b) the intentional touching, not through the clothing, of the genitalia of a person who had not attained the age of sixteen years, namely, S.C.G.[1.], with an intent to abuse, humiliate, harass, degrade, and arouse and gratify the sexual desire of any person.

The Government simply failed to present sufficient evidence of attempted or actual contact or of intentional touching, not through the clothing, of S.C.G.1.'s genitalia as alleged in the indictment for counts 1 through 4.[2]

The Government attempts to salvage the convictions for counts 1 through 4 by arguing that S.C.G.1.'s testimony is sufficient when considered in light of Exhibit 13—the handwritten note that S.C.G.1. wrote during her meeting with Paula Condol—which stated "it happen [sic] when we went horse riding and on the weit [sic] bench 3 times and on the floor in the basement." S.C.G.1. confirmed that the "it" referenced in Exhibit 13 referred to when White Bull touched S.C.G.1.'s "middle" with his "middle." The Government then contends that because the same "it" occurred on all five occasions, presentation of sufficient evidence as to count 5 also constitutes sufficient evidence to convict on counts 1 through 4.

---

[2]We note with interest that S.C.G.1. apparently described the events on which counts 1 through 4 were based in much greater detail to Paula Condol during her forensic interview. Condol's notes from this interview, which contained a brief summary of S.C.G.1.'s statements, were attached as an exhibit to the Government's response to White Bull's motion in limine. It is unclear from the record why the Government did not seek to introduce this additional evidence at trial.

-9-

S.C.G.1.'s statement that "it" happened on all five occasions is not sufficient because there were not enough facts to indicate what specific details of the alleged sexual abuse were repeated during each occasion described in Exhibit 13. In other words, the jury was given insufficient evidence to determine exactly what "it" was and whether the incidents described in counts 1 through 4 were sufficiently similar to the incident described in count 5 to constitute aggravated sexual abuse. The Government cannot support a conviction for four counts of the indictment by relying on the fact that there was sufficient evidence to convict on the fifth count. See United States v. Powell, 469 U.S. 57, 67 (1984) ("This review [of the sufficiency of the evidence] should be independent of the jury's determination that evidence on another count was insufficient.").

Accordingly, we reverse White Bull's conviction under counts 1, 2, 3, and 4, and remand for a judgment of acquittal on those counts.

B.

White Bull next contends that the district court committed reversible error by admitting three pieces of prejudicial hearsay evidence. We usually review challenges to the district court's evidentiary rulings for an abuse of discretion, reversing only if an error was not harmless. Espinosa, 585 F.3d at 430. If the admission of a contested piece of evidence was not timely objected to at trial, however, we review for plain error. United States v. Orr, 636 F.3d 944, 956-57 (8th Cir. 2010).

For relief under plain error review, White Bull must show (1) the district court committed an error, (2) the error is clear or obvious, and (3) the error affected his substantial rights. Puckett v. United States, 129 S. Ct. 1423, 1429 (2009). If these first three requirements are met, "the court of appeals has the *discretion* to remedy the error—discretion which ought to be exercised only if the error 'seriously affects the fairness, integrity or public reputation of judicial proceedings.'" Id. (quoting United

-10-

States v. Olano, 507 U.S. 725, 736 (1993)). Obtaining relief under this standard of review is difficult, "as it should be." Id. (quoting United States v. Dominguez Benitez, 542 U.S. 74, 83 n.9 (2004)).

1.

White Bull first argues that the district court erred in admitting Exhibit 13, the note that S.C.G.1. wrote during her meeting with Paula Condol, because Exhibit 13 was inadmissible hearsay. Although White Bull raised an objection to the admission of Exhibit 13 in a motion in limine, the district court deferred ruling on the motion and White Bull failed to object when the exhibit was actually offered into evidence at trial. As a result, we review the admission of Exhibit 13 for plain error. See Fed. R. Crim. P. 52(b); United States v. Frokjer, 415 F.3d 865, 872 (8th Cir. 2005).

The Government argues that Exhibit 13 was admissible under Fed. R. Evid. 807, the "residual or 'catch-all' exception" to the rule prohibiting the admission of hearsay. United States v. Smith, 591 F.3d 974, 980 (8th Cir. 2010). For a hearsay statement to be admissible under Rule 807, the rule requires that:

> (1) the statement has equivalent circumstantial guarantees of trustworthiness to the other hearsay exceptions; (2) the statement is offered as evidence of a material fact; (3) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; (4) the general purposes of the rules and the interests of justice will best be served by its admission; and (5) adequate notice must be given to the opposing party.

United States v. Peneaux, 432 F.3d 882, 891 (8th Cir. 2005).

Exhibit 13 possessed equivalent circumstantial guarantees of trustworthiness. Evidence presented at trial showed that Paula Condol has ten years of extensive

training and experience as a forensic examiner, S.C.G.1. used age-appropriate language in describing the abuse, and S.C.G.1. consistently repeated the same facts about the abuse to adults. See id.; United States v. Thunder Horse, 370 F.3d 745, 748 (8th Cir. 2004). Perhaps the strongest circumstantial guarantee of trustworthiness, however, is the fact that S.C.G.1. testified at trial and was subject to cross examination regarding her statement in Exhibit 13. S.C.G.1. testified that she wrote Exhibit 13 and that it described an event that actually occurred. We have previously stated that this situation "vitiates the main concern of the hearsay rule." Peneaux, 432 F.3d at 892 (quotation omitted). Additionally, Exhibit 13 was offered as evidence of a material fact because it was relevant to the allegation of aggravated sexual abuse. See id. ("The materiality requirement in Rule 807 is merely a restatement of the general requirement that evidence must be relevant." (quotation omitted)). There is also no doubt that White Bull received adequate notice because counsel for the Government sent a letter to White Bull's counsel prior to trial, explaining that the Government might offer Exhibit 13 into evidence.

The more difficult questions, however, are whether Exhibit 13 was more probative on the point for which it was offered than any other piece of evidence the Government could procure through reasonable efforts and whether the admission of Exhibit 13 furthers the interests of justice. Prior to the admission of Exhibit 13, the Government asked S.C.G.1. about the alleged abuse by White Bull:

Q. [S.C.G.1.], what did [White Bull] do to you?

A. I don't know.

Q. Was it something good, or was it something bad, or was it something else?

A. Something bad.

Q. What was it that was bad that he did?

A. I don't know.

Q. When you talked to [Paula Condol], [S.C.G.1.], did you tell her what he did to you?

A. Yes.

Q. Did you tell her the truth?

A. Yes.

Q. So you told her things that really happened to you?

A. Yes.

(Trial Tr. 135.) Although the Government could have further pursued the matter with S.C.G.1. prior to the submission of Exhibit 13 into evidence, we cannot say it was clear or obvious error to conclude that Exhibit 13 was more probative for the specific details of the alleged aggravated sexual abuse than what S.C.G.1. could provide through her testimony at trial. In her answers to the Government's questions on direct examination, S.C.G.1. repeatedly stated that she did not know what White Bull had done to her. Although S.C.G.1. later went on to describe aspects of the alleged abuse, her hesitant and somewhat inconsistent testimony made the admission of Exhibit 13 through Rule 807 possible. See Peneaux, 432 F.3d at 893. As a result, we deny White Bull's claim for plain error relief stemming from the admission of Exhibit 13 at trial.

2.

White Bull next challenges a portion of Plenty Chief's trial testimony as inadmissible hearsay. At trial, the Government asked Plenty Chief about the events that occurred on the morning of March 10, 2009, after S.C.G.2. said she saw White Bull sexually abusing S.C.G.1. In Plenty Chief's response to a question posed on direct examination, she stated, "You know, [White Bull] came out and asked me how

come I believe her and are you going to believe her or something. And [S.C.G.1.] peaked up underneath his arms and said, 'Mom. This wasn't the first time,' and she started crying." (Trial Tr. 80.) The district court overruled White Bull's hearsay objection stating, "Well, it's not clear which daughter she was referring to in that testimony, so the objection is overruled." (Trial Tr. 81.) Because White Bull timely objected to the admission of this evidence at trial, we review the district court's decision for an abuse of discretion. Espinosa, 585 F.3d at 430.

We need not address the merits of this claim, however, because any alleged error in admitting this portion of Plenty Chief's testimony was harmless. "An evidentiary error amounts to harmless error if, after viewing the entire record, the reviewing court determines that no substantial rights of the defendant were affected, and that the error had no, or only slight, influence on the verdict." United States v. Neadeau, 639 F.3d 453, 456 (8th Cir. 2011) (quoting United States v. Mitchell, 31 F.3d 628, 632 (8th Cir. 1994)). To the extent that the statement at issue was admitted for its truth, it was admitted as evidence that White Bull had, in fact, abused S.C.G.1. on an occasion prior to the basement incident of March 10, 2009. Accordingly, the statement related primarily to counts 1 through 4 of the indictment. Because we have ordered the convictions for these counts to be vacated, White Bull was not prejudiced by the admission of this statement at trial. See United States v. Webb, 214 F.3d 962, 964-65 (8th Cir. 2000); United States v. Tucker, 137 F.3d 1016, 1036 (8th Cir. 1998); accord United States v. Adams, No. 08-4180, 2009 WL 1845595, at *5 (4th Cir. June 29, 2009) (unpublished per curiam). Moreover, to the extent the statement possibly related to count 5, the alleged error was also harmless in light of the other substantial evidence of White Bull's guilt for that count. See Espinosa, 585 F.3d at 428.

3.

White Bull next claims that three statements made during Condol's testimony at trial were inadmissible hearsay. The challenged statements made by Condol are:

-14-

(1) "[S.C.G.1.] had talked about being touched, and so I drew a picture and asked her to circle where she had been touched"; (2) "There was also another part when visiting with [S.C.G.1.], she was having a difficult time, and I asked her if it would be easier for her to write what she needed to tell me, and she said yes, and so then she wrote this Exhibit 13"; and (3) in response to a question of whether S.C.G.1. had told Condol about when the alleged abuse ended, Condol answered, "[S.C.G.1.] had stated that she was nine and it was after her mom had gotten married." (Trial Tr. 155-56.) The Government contends that each statement is admissible under Rule 807.

The proper standard of review for each of these statements is disputed by the parties. The Government argues that White Bull did not specifically or timely object to each of these statements when they were offered at trial and that we should therefore review only for plain error. In contrast, White Bull argues for an abuse-of-discretion standard because he claims to have timely objected to each of the contested statements. We need not resolve this dispute, however, because we conclude that even assuming White Bull timely objected to each statement, the admission of each statement was either not an abuse of discretion or constituted harmless error.

The district court's admission of the first statement by Condol challenged by White Bull, if error, was harmless. The only possible piece of hearsay in this statement was Condol's testimony that S.C.G.1. "talked about being touched." But immediately prior to Condol's testimony, S.C.G.1. herself testified that she had been touched by White Bull and that she told Condol about these incidents. The hearsay statement made by Condol was cumulative in light of S.C.G.1.'s testimony and therefore harmless. See United States v. Gettel, 474 F.3d 1081, 1090 (8th Cir. 2007) ("A trial error is harmless 'if other evidence to the same effect was properly before the jury.'" (quoting United States v. White, 11 F.3d 1446, 1451 (8th Cir. 1993))).

The second statement challenged by White Bull does not constitute hearsay. The only out-of-court statement referenced in this portion of Condol's testimony is

S.C.G.1.'s statement that it would be easier for her to write down what she needed to tell Condol. But S.C.G.1.'s statement was not offered for its truth. The Government was not attempting to prove that it was actually easier for S.C.G.1. to write about what happened to her rather than describing it aloud. Therefore, White Bull's challenge to this statement as inadmissible hearsay is without merit.

Finally, the admission of the third statement challenged by White Bull was not an abuse of the district court's discretion. Prior to allowing Condol's testimony, the district court told both attorneys that it had considered all of the factors necessary for admission under Rule 807. On appeal, White Bull challenges only the district court's conclusion that the statement was more probative on the point for which it was offered than any other piece of available evidence.

In Peneaux, we stated that "[w]here testifying adults are able to provide information that the victim is unwilling or unable to give, this testimony may come in under Rule 807." 432 F.3d at 893. We affirmed this statement in United States v. W.B. and further held that although "hearsay testimony should only be admitted under Rule 807 in exceptional circumstances[,] . . . such exceptional circumstances generally exist when a child victim of sexual abuse is unable or unwilling to testify to a material issue regarding the abuse." 452 F.3d 1002, 1006 (8th Cir. 2006).

With this in mind, we conclude that the district court did not abuse its discretion in finding that Condol's statement was more probative on the point for which it was offered than any other piece of evidence. The trial transcript reveals, and both parties appear to agree, that S.C.G.1. was unwilling or unable to offer clear testimony at trial about the specific dates of the five occasions that White Bull allegedly abused her. In particular, S.C.G.1. gave the following testimony when asked about the time period of the alleged abuse:

Q. [S.C.G.1.], do you remember when this started?

A. No.

Q. Do you remember if you told [Paula Condol] when you talked to her when it started?

A. No.

Q. When's the last time it happened, [S.C.G.1], do you remember?

A. No.

Q. [S.C.G.1.], how old were you when these things were happening to you?

A. Eight.

(Trial Tr. 147-48.) Although S.C.G.1. did eventually say she was eight when the abuse happened, she did not provide any information regarding when the alleged abuse began or ended. In light of this testimony, the Government called Condol to testify regarding the dates of the alleged abuse as they had been relayed to Condol by S.C.G.1. during the forensic interview. Considering the content of S.C.G.1.'s testimony, the district court did not abuse its discretion in finding Condol's testimony more probative on this point than any other piece of evidence that was reasonably available to the Government. See W.B., 452 F.3d at 1006 (concluding that hearsay statements from the victim presented through a forensic examiner's trial testimony were the most probative evidence where the victim was "unable or unwilling to recall specific details regarding . . . the time frame of the abuse"); Peneaux, 432 F.3d at 892-93 (allowing hearsay testimony under Rule 807 where the victim's testimony regarding the point was "inconsistent and at times unclear").

C.

White Bull also claims the district court committed reversible error by not conducting an evidentiary hearing into possible juror misconduct. We usually review the district court's decision not to conduct an evidentiary hearing into possible juror misconduct for an abuse of discretion. United States v. Camacho, 555 F.3d 695, 704-05 (8th Cir. 2009). Because White Bull concedes that he did not request an evidentiary hearing before the district court, however, we review this claim for plain error, see Fed. R. Crim. P. 52(b); United States v. Perry, 438 F.3d 642, 651 (6th Cir. 2006), and find none.

A district court is not obligated to conduct an evidentiary hearing each time there is a possibility of juror bias. See United States v. Moses, 15 F.3d 774, 778 (8th Cir. 1994); accord United States v. Stewart, 433 F.3d 273, 306 (2d Cir. 2006) ("[A]n evidentiary hearing is not held to afford a convicted defendant the opportunity to conduct a fishing expedition."); United States v. Boney, 97 F.2d 624, 634 (D.C. Cir. 1992) ("We do not now hold that any false statement or deliberate concealment by a juror necessitates an evidentiary hearing."). Rather, in considering whether an evidentiary hearing is necessary, a district court should consider numerous factors, including the "the content of the allegations, the seriousness of the alleged misconduct or bias, and the credibility of the source." United States v. Angulo, 4 F.3d 843, 847 (9th Cir. 1993).

During voir dire questioning, the district court asked the potential jurors if they or any members of their immediate family had "ever been the victim of or involved in any child abuse, sex abuse cases, whether they were allegations that were made against [them] or someone in [their] family, or someone in [their] family may have been a victim of such a sexual offense of any sort." (Jury Selection Tr. 15.) After the jury had been impaneled, but shortly before the jury began deliberations, a member

-18-

of the jury approached the court with a concern that he may have responded to the court's voir dire question untruthfully. The juror told the district court that his concern related to an experience that occurred in 1986, when the juror was about 20, where the juror had "some sexual contact" with a male friend. The juror told the district court that the experience "had not concerned him at the time," and that "he wasn't really certain in his own mind whether this was a sexual assault," but that "he simply wanted to let [the district court] know . . . he was uncertain whether he needed to revise his response to" the voir dire questions.

Based on the record before us, it is unclear whether the juror actually answered any voir dire question untruthfully. Further, there is nothing to suggest this experience affected the juror's impartiality. As a result, although evidentiary hearings are often useful to determine potential juror bias, see Stewart, 433 F.3d at 306, the district court's failure to conduct a hearing in this instance was not plain error, cf. United States v. Tucker, 137 F.3d 1016, 1028 (8th Cir. 1998) (remanding for an evidentiary hearing into juror misconduct where the defendant presented evidence that a juror dishonestly answered voir dire questions because she and her family were biased against the defendant).

### III.

White Bull's final contention is that the district court committed a sentencing error and violated his double jeopardy rights by imposing certain supervised release conditions through a written judgment after the district court failed to expressly state those conditions at the oral pronouncement of White Bull's sentence. This claim presents a legal question that we review de novo. United States v. Hively, 437 F.3d 752, 762 (8th Cir. 2006).

-19-

"The Double Jeopardy Clause prevents a sentencing court from increasing a defendant's sentence after the defendant has developed a legitimate 'expectation of finality in the original sentence.'" United States v. Harrison, 113 F.3d 135, 138 (8th Cir. 1997) (quoting United States v. DiFrancesco, 449 U.S. 117, 139 (1980)). Accordingly, a sentencing court cannot alter the sentence of a criminal defendant after that defendant has already begun serving his sentence. United States v. Garner, 32 F.3d 1305, 1312 (8th Cir. 1994) (quoting Johnson v. Mabry, 602 F.2d 167, 170 (8th Cir. 1979)).

At sentencing, the district court stated:

> While you're on supervised release, there's a number of standard conditions of supervision that will apply. And if you violate any of those conditions, then you can be brought back into federal court and looking at more time. I'm going to sign the Judgment today, and that will list all of these conditions of supervision.

(Sent. Tr. 43.) The district court then went on to describe various special conditions of White Bull's supervised release and concluded with the following colloquy:

> The Court: Any questions so far?
>
> The Defendant: No, I've – my celly has the same conditions, so –
>
> The Court: Pardon?
>
> The Defendant: My cell – my cellmate, he has the same conditions.

(Sent. Tr. 45.)

As this record reflects, White Bull received sufficient notice at the time of the oral pronouncement of his sentence that he would be subject to numerous standard

conditions of supervised release that would be described in more detail in the written judgment. The standard conditions of supervised release contained in the written judgment were virtually identical to the first thirteen standard conditions listed in United States Sentencing Commission, Guidelines Manual, §5D1.3(c). Thus, White Bull had no legitimate expectation in the finality of his sentence as it was announced orally by the district court, see United States v. Vega-Ortiz, 425 F.3d 20, 22-23 (1st Cir. 2005), and his double jeopardy rights were not violated.

## IV.

For the foregoing reasons, we affirm White Bull's conviction for count 5. We reverse and vacate White Bull's conviction for counts 1, 2, 3, and 4 and remand for entry of an amended judgment. We do not, however, remand White Bull's case for resentencing. White Bull did not seek such relief on appeal, and we find it unwarranted in any event. As previously mentioned, White Bull received the mandatory minimum of 360 months imprisonment for each of the five counts with those terms to run concurrently. Thus, there is no need to remand for resentencing because the vacated convictions would not affect White Bull's sentence for count 5. See United States v. Wilson, 619 F.3d 787, 798-99 (8th Cir. 2010); United States v. McKnight, 17 F.3d 1139, 1145 (8th Cir. 1994).

_____