**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 20, 2021**

**Christopher M. Wolpert**
**Clerk of Court**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

WILKIE BILL BURTRUM, a/k/a Junior,

    Defendant - Appellant.

No. 20-5091

_____

**Appeal from the United States District Court**
**for the Northern District of Oklahoma**
**(D.C. No. 4:19-CR-00247-GKF-1)**

_____

Barbara L. Woltz, Research and Writing Specialist (Julia L. O'Connell, Federal Public Defender, and Barry L. Derryberry, Assistant Federal Public Defender, with her on the briefs) Northern and Eastern Districts of Oklahoma, Tulsa, Oklahoma, for Defendant – Appellant.

Leena Alam, Assistant United States Attorney, Tulsa, Oklahoma (Clinton J. Johnson, Acting United States Attorney; M. Scott Proctor and Shannon Cozzoni, Assistant United States Attorneys, Tulsa, Oklahoma; Nicholas L. McQuaid, Acting Assistant Attorney General, Robert A. Zink, Acting Deputy Assistant Attorney General, and Sofia M. Vickery, Appellate Section Attorney, United States Department of Justice, Washington, DC, with her on the briefs) for Plaintiff – Appellee.

_____

Before **McHUGH**, **EBEL**, and **EID**, Circuit Judges.

_____

**McHUGH**, Circuit Judge.

_____

After a bench trial, the United States District Court for the Northern District of Oklahoma found Appellant Wilkie[1] Bill Burtrum guilty of one count of aggravated sexual abuse and one count of sexual abuse in Indian country under 18 U.S.C. § 2241(c) and 18 U.S.C. § 2242. Because Mr. Burtrum had previously been convicted of aggravated sexual abuse in Indian country, the district court sentenced him to mandatory life imprisonment on the first count pursuant to 18 U.S.C. § 3559(e). The court sentenced him to 360 months on the second count. And it ordered Mr. Burtrum to pay the victim $5,850 in restitution for the equivalent of a year-and-a-half of weekly equine therapy sessions.

On appeal, Mr. Burtrum argues his aggravated sexual abuse conviction was supported by insufficient evidence, his mandatory life sentence is unconstitutional, and a portion of the restitution award was not reasonably certain or supported by sufficient evidence. We hold the aggravated sexual abuse conviction was supported by sufficient evidence, the mandatory life sentence is constitutional, and the restitution award was a reasonably certain estimate supported by evidence. Therefore, we affirm the conviction, sentence, and restitution award.

---

[1] Mr. Burtrum's first name has been spelled as both "Wilkie" and "Willkie" in the record. *See, e.g.*, ROA Vol. I at 1–11 (reflecting both spellings in the district court docket). Because "Wilkie" is the spelling that currently appears on this court's docket, and the parties have not clarified which spelling is correct, we use the "Wilkie" spelling in this order.

## I.     BACKGROUND

### *A.  Factual Background*

In 1992, a jury sitting in the United States District Court for the Northern District of Oklahoma convicted Mr. Burtrum of two counts of aggravated sexual abuse of a child and two counts of abusive sexual contact with a child. More than twenty-five years later, in 2018, Mr. Burtrum's nine-year-old step-nephew, C.C., moved into a home on Mr. Burtrum's property located in a Quapaw Nation allotment. Mr. Burtrum developed a close relationship with C.C. He worked with C.C. nearly every day, and he allowed C.C. to access a swimming pool on his property. But Mr. Burtrum took advantage of their close relationship and sexually abused C.C. when they were alone together.

In October 2019, David Buffalo, C.C.'s step-uncle, warned C.C.'s father that Mr. Burtrum might be sexually abusing C.C. C.C.'s father took immediate action and reported his concerns to the Quapaw marshals.

As part of their investigation, the Quapaw marshals interviewed Mr. Burtrum. Mr. Burtrum denied sexually abusing C.C., but he admitted he may have accidentally touched C.C.'s penis when they were moving a pickup truck together or when they were trying to find lights at a warehouse. Mr. Burtrum also said, "[i]f the boy said I touched his penis, I touched his penis." ROA Vol. II at 59.

### B. *Procedural Background*

#### 1. Trial

A federal grand jury returned an indictment against Mr. Burtrum with one charge of aggravated sexual abuse under 18 U.S.C. § 2241(c) (aggravated sexual abuse of a child) and one charge of sexual abuse under 18 U.S.C. § 2242 (sexual abuse). With Mr. Burtrum's consent, the district court held a bench trial on both counts of the indictment. Prior to trial, the parties stipulated to the following facts: (1) Mr. Burtrum is an Indian and a member of the Quapaw Nation; (2) in 1992, Mr. Burtrum was convicted of two counts of aggravated sexual abuse with children and two counts of abusive sexual contact with children in Indian country; and (3) Mr. Burtrum's property was within Indian country, as defined by 18 U.S.C. § 1151.

At trial, C.C. testified that Mr. Burtrum touched his "bad spots" "by [his] butt." *Id.* at 48. The prosecutor asked him to identify his "bad spots" on a diagram of a male body, and C.C. circled the penis. *Id.* The prosecutor then asked C.C. to identify the butt on the diagram, so C.C. put an "X" over the butt. C.C. said Mr. Burtrum touched his "bad spots" while they were alone in three locations: Mr. Burtrum's warehouse, the shed on the property, and Mr. Burtrum's home. *Id.* C.C. testified that Mr. Burtrum touched him both over and under the clothes, and he explained that Mr. Burtrum put his hand inside the top of his pants to touch C.C.'s "bad spots" under the clothes. C.C. said Mr. Burtrum told him not to tell anyone about the touching. He also said he did not remember if Mr. Burtrum had ever accidentally touched his penis, but the touching he described was different from

4

accidental touching. C.C. demonstrated how Mr. Burtrum would touch his penis by putting his hand in a circle and rubbing with the thumb.

A Quapaw marshal also testified about the interview with Mr. Burtrum. The marshal said Mr. Burtrum "initially denied any involvement," but Mr. Burtrum also stated, "[i]f the boy said I touched his penis, I touched his penis." *Id.* at 59.

After the Government rested its case, Mr. Burtrum sought a directed verdict on the aggravated sexual abuse charge. He argued the Government had not produced evidence or testimony that Mr. Burtrum touched C.C.'s penis "not through the clothing." *Id.* at 81. Mr. Burtrum suggested that C.C.'s testimony could have meant that Mr. Burtrum touched him under the pants but with underwear between Mr. Burtrum's hand and the penis, which would not satisfy the direct contact required by § 2241(c). The Government responded that C.C. clearly "testified to both over and under the clothing" touching. *Id.* at 82. The district court denied Mr. Burtrum's motion for a directed verdict and found him guilty of both counts.

**2. Sentencing**

Because Mr. Burtrum was convicted of aggravated sexual abuse for a second time, he was subject to a mandatory life sentence under 18 U.S.C. § 3559(e). In a sentencing memorandum and at the sentencing hearing, Mr. Burtrum argued the mandatory life sentence was unconstitutional, both facially and as applied to him. According to Mr. Burtrum, the Eighth Amendment requires sentences to be tailored to the specific offender and the specific offense, and the mandatory life sentence under § 3559(e) was not tailored to either. He acknowledged, however, that binding

5

Supreme Court case law did not support his argument and that he was raising the issue as a good faith argument for a change in the law.

The district court held the mandatory life sentence was constitutional under binding Supreme Court precedent. Then, the district court imposed the mandatory life sentence for the aggravated sexual abuse conviction and imposed a sentence of 360 months for the sexual abuse conviction, with the sentences to run concurrently.

The district court also heard evidence about restitution due from Mr. Burtrum for the cost of C.C.'s therapy. Jessica Mullin, the program director at Modoc Youth and Family Services, testified that C.C. would be a good candidate for equine therapy. She explained patients typically attend therapy every week for at least a year, after which the patient is evaluated to determine how much therapy is needed going forward. She said in C.C.'s case, it would be best to have the option to provide two years of therapy so he could taper off his sessions after the first year. She explained the taper-off period would be based on need, and after a year "he may still need weekly sessions. He may just need biweekly and then graduate to monthly and then terminate from services." ROA Vol. III at 56–57.

The Government sought restitution in an amount equivalent to two years of weekly therapy so C.C. would have the flexibility to continue therapy on a weekly basis throughout the second year as necessary. Mr. Burtrum argued only one year of therapy was reasonably certain based on Ms. Mullin's testimony. The district court found the equivalent of a year-and-a-half of weekly therapy sessions was a

reasonably certain estimate and ordered Mr. Burtrum to pay $5,850. The next day,

Mr. Burtrum timely filed his notice of appeal.

## II.    DISCUSSION

On appeal, Mr. Burtrum challenges his conviction under 18 U.S.C. § 2241(c),

arguing the evidence was not sufficient to support the conviction. He contends the

mandatory life sentence under § 3559(e) is unconstitutional. And he claims the

district court abused its discretion in determining the restitution amount. We address

each argument in turn, affirming the district court on all three issues.

### A.  Sufficient Evidence

### 1.  Standard of Review

"We review the sufficiency of evidence de novo." *United States v. Sharp*, 749

F.3d 1267, 1275 (10th Cir. 2014) (quotation marks omitted). This review is "highly

deferential," meaning we consider the evidence and make reasonable inferences in

the light most favorable to the Government. *United States v. Pickel*, 863 F.3d 1240,

1251 (10th Cir. 2017). We "will not weigh conflicting evidence or consider witness

credibility." *United States v. Ramos-Arenas*, 596 F.3d 783, 786 (10th Cir. 2010)

(internal quotation marks omitted). And we will reverse the conviction only "if no

rational trier of fact could have found the essential elements of the crime beyond a

reasonable doubt." *Pickel*, 863 F.3d at 1251 (internal quotation marks omitted).

### 2.  "Sexual Act"

Mr. Burtrum challenges his conviction for aggravated sexual abuse, claiming

there was not sufficient evidence that he engaged in a "sexual act" with C.C. *See* 18

U.S.C. § 2241(c) (prohibiting "knowingly engag[ing] in a sexual act with another person who has not attained the age of 12 years"). The definition of "sexual act" includes "the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." 18 U.S.C. § 2246(2)(D). This definition requires "the direct touching of genitals with certain sexual or abusive intents."[2] *United States v. White*, 782 F.3d 1118, 1137 (10th Cir. 2015); *cf.* 18 U.S.C. § 2246(3) (defining "sexual contact" as intentional touching of various sexual body parts either directly or through the clothing).

### 3. Analysis

Mr. Burtrum argues there was not enough evidence to support his conviction for aggravated sexual abuse because there was no evidence that he made direct contact with C.C.'s penis. He rejects C.C.'s testimony on this point as inconclusive, stating, "it is possible that C.C. meant that Mr. Burtrum touched him under his pants, but over his underwear."[3] Aplt. Br. at 18. Mr. Burtrum misapprehends the relevant

---

[2] Mr. Burtrum argues a sexual act requires "'skin-to-skin touching.'" Aplt. Br. at 14 (quoting *United States v. Forster*, 549 F. App'x 757, 768 n.7 (10th Cir. 2013) (unpublished)). However, Mr. Burtrum challenges only whether contact was made with C.C.'s skin. Therefore, we need not decide whether the defendant's skin must also be uncovered and make direct contact with the victim's skin to be a "sexual act" within the meaning of the statute.

[3] In his reply brief, Mr. Burtrum also asserts a new argument that he did not raise in his opening brief or at trial: that C.C.'s testimony was ambiguous because he identified his "bad spots" to include both his penis and his butt. Because touching of the butt, whether over or under the clothes, would not constitute a sexual act, Mr. Burtrum contends the evidence does not support the § 2241(c) conviction. *See* 18

inquiry. "The question in a sufficiency-of-the-evidence challenge is not whether a reasonable jury could possibly conceive of an alternative interpretation of the evidence at trial." *United States v. White Bull*, 646 F.3d 1082, 1089 (8th Cir. 2011). It is whether a rational trier of fact could have found the elements beyond a reasonable doubt. *Pickel*, 863 F.3d at 1251.

From C.C.'s trial testimony, a rational trier of fact could find that Mr. Burtrum made direct contact with C.C.'s penis. C.C. testified Mr. Burtrum touched his "bad spots" that were "by [his] butt." ROA Vol. II at 48. When the prosecutor asked C.C. to identify the "bad spots," C.C. circled the penis on a diagram of a male body. *Id.* The prosecutor also asked C.C. if Mr. Burtrum "touched [him] over or under his clothing," to which C.C. answered "[b]oth." *Id.* at 49. C.C. further explained that Mr. Burtrum "would put his hand inside" the top of his pants to touch him under the clothes. *Id.* at 50. And C.C. demonstrated to the court how Mr. Burtrum would touch him by making a circle with his hand and showing how Mr. Burtrum used his thumb to rub the penis. *Id.* at 53. Finally, the Quapaw marshal testified that Mr. Burtrum had stated, "[i]f the boy said I touched his penis, I touched his penis." *Id.* at 59. From this

---

U.S.C. § 2246(2) (including touching of the genitalia of another person in the definition of a sexual act). "An issue or argument insufficiently raised in the opening brief," like this one, "is deemed waived." C*ommonwealth Prop. Advocates, LLC v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1200 (10th Cir. 2011) (quotation marks omitted). An argument is also waived when it is not raised before the district court and the appellant fails to make a plain-error argument on appeal. *United States v. Leffler*, 942 F.3d 1192, 1196 (10th Cir. 2019). Mr. Burtrum did not make a plain-error argument here. Thus, Mr. Burtrum has waived this argument, and we will not consider it.

evidence, a reasonable fact finder could conclude Mr. Burtrum performed a sexual act on C.C.

Mr. Burtrum disagrees, relying on the Eighth Circuit's analysis in *United States v. White Bull*. There, a jury convicted Mr. White Bull of five counts of aggravated sexual abuse with a child in Indian country under § 2241(c). *White Bull*, 646 F.3d at 1086. Like Mr. Burtrum, Mr. White Bull argued the government had not presented sufficient evidence that he engaged in "sexual acts" with a child. *Id.* at 1088. The Eighth Circuit determined there was sufficient evidence to support a conviction under one count because the victim "testified that [the defendant] touched her 'private part' and her 'middle' while her pants and underwear were down" and identified her "private part" by drawing "a circle on a figure around the area where the torso meets the legs." *Id.* at 1089. The court affirmed this conviction because, from the testimony, a jury could reasonably infer the defendant touched the victim's genitalia directly. *Id.* With respect to the other four counts, however, the Eighth Circuit reversed because the only evidence supporting those convictions was the victim's testimony that "it" happened four other times without specifying what "it" meant. *Id.* at 1090.

Mr. Burtrum argues that, as with the four unsupported counts in *White Bull*, C.C.'s testimony did not include the details necessary to support an aggravated sexual abuse conviction. In our view, however, C.C.'s testimony is most comparable to the testimony that supported the first conviction in *White Bull*. There, as here, the victim did not explicitly say the defendant touched her uncovered genitalia. But the

10

court affirmed the conviction because there was enough evidence for a reasonable fact finder to infer that Mr. White Bull touched her genitalia "not through the clothing." *Id.* at 1089.

We reach the same conclusion here. As in *White Bull*, a reasonable fact finder could infer from the evidence that Mr. Burtrum touched C.C.'s penis under his clothes, including under his underwear. Taking all reasonable interpretations of the evidence in favor of the Government, as we must, we hold the evidence was sufficient to support the conviction under § 2241(c).

### B.  Cruel and Unusual Punishment

With a repeat conviction of aggravated sexual abuse, Mr. Burtrum became subject to a mandatory sentence of life imprisonment. *See* 18 U.S.C. § 3559(e)(1). Mr. Burtrum argues that the mandatory life sentence is unconstitutional as applied to him.[4] We review the constitutionality of sentences de novo. *United States v. Angelos*, 433 F.3d 738, 750 (10th Cir. 2006); *United States v. Eaton*, 260 F.3d 1232, 1237 (10th Cir. 2001). Challenges to the constitutionality of a federal statute are also reviewed de novo. *United States v. Price*, 265 F.3d 1097, 1106 (10th Cir. 2001).

According to Mr. Burtrum, the Eighth Amendment's prohibition against "cruel and unusual punishments" requires that sentences be imposed on a case-by-case basis after considering the specific person and the specific crime. Mr. Burtrum concedes,

---

[4] Mr. Burtrum told the district court his constitutional challenge of the mandatory life sentence was both facial and as applied to him. On appeal, however, Mr. Burtrum argues only that § 3559(e) is unconstitutional as applied to him, so we limit our review to the as-applied challenge.

however, that we cannot give him his requested relief under *Harmelin v. Michigan*, 501 U.S. 957 (1991).

In *Harmelin*, the Supreme Court determined the Eighth Amendment does not require individualized sentencing in non-capital cases. 501 U.S. at 994–96. Furthermore, "[t]he Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Id.* at 1001 (Kennedy, J., concurring). To determine whether a sentence is grossly disproportionate, courts compare the gravity of the offense to the severity of the sentence. *Id.* at 1005 (Kennedy, J., concurring); *see also Angelos*, 433 F.3d at 750 (applying the narrow proportionality test Justice Kennedy articulated in *Harmelin*).

Mr. Burtrum was convicted of two counts of aggravated sexual abuse of a child in 1992, and he was convicted of another count of aggravated sexual abuse of a child in 2020. It is beyond dispute that aggravated sexual abuse of a child is a serious crime that can severely affect vulnerable child victims intellectually, emotionally, and physically throughout their lives. As a result, Congress has determined that "recidivism in sexual crimes against children ought to trigger a much harsher sentence." *United States v. Kniffley*, 729 F. App'x 406, 412 (6th Cir. 2018) (unpublished); *see* 18 U.S.C. § 3559(e). Thus, although a mandatory life sentence is a severe penalty, it is not disproportionately so. We agree with the district court that Mr. Burtrum's mandatory life sentence is constitutional, and we affirm the sentence.

### C. Restitution

Mr. Burtrum also challenges the amount the district court ordered him to pay in restitution. "We review the legality of a restitution order de novo, the district court's factual findings for clear error, and the amount of restitution for abuse of discretion." *United States v. Parker*, 553 F.3d 1309, 1323 (10th Cir. 2009).

Federal law requires a district court to order a defendant who is convicted of a sexual abuse offense to pay restitution for "medical services relating to physical, psychiatric, or psychological care." 18 U.S.C. § 2248. "Any dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence." *Id.* § 3664(e). "[D]istrict courts must estimate the amounts that victims will spend on future counseling with reasonable certainty, in accordance with the procedures set forth in 18 U.S.C. § 3664." *United States v. Julian*, 242 F.3d 1245, 1248 (10th Cir. 2001) (quoting *United States v. Laney*, 189 F.3d 954, 967 n.14 (9th Cir. 1999)). We have also held that "restitution orders pertaining to costs associated with medical and related services must be specific and contain details as to dollars not generalities, and that the district court must support its restitution order with findings of fact in the record." *Id.* (internal quotation marks omitted).

Mr. Burtrum argues the district court did not apply the reasonable certainty standard and the evidence did not support a finding that therapy beyond one year was reasonably certain. In our view, the record repudiates both claims.

First, the district court expressly "adopt[ed] the defendant's suggested standard of reasonable certainty and "award[ed] restitution in the amount of $5,850." ROA

13

Vol. III at 64. Second, the court's finding was based on Ms. Mullin's testimony that C.C. would need one year of weekly sessions and that the sessions would taper off in the second year if things were going well. This evidence supports a finding that between one and two years of therapy was a reasonably certain estimate. Therefore, the district court did not abuse its discretion by ordering Mr. Burtrum to pay $5,850, the equivalent of a year-and-a-half of weekly therapy sessions, in restitution.

### III.    CONCLUSION

For the foregoing reasons, we AFFIRM the conviction, sentence, and restitution award.