

# In the Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| IN THE INTEREST OF: D.G.E., | ) | |
| Appellant, ) | | WD82856 |
| v. | ) | Consolidated with WD82857 |
| | ) | |
| JUVENILE OFFICER, | ) | FILED: April 21, 2020 |
| Respondent. ) | | |

### APPEAL FROM THE CIRCUIT COURT OF MORGAN COUNTY
THE HONORABLE MATTHEW P. HAMNER, JUDGE

### BEFORE DIVISION THREE: LISA WHITE HARDWICK, PRESIDING JUDGE, ALOK AHUJA AND CYNTHIA L. MARTIN, JUDGES

D.G.E. appeals the juvenile court's judgment finding him delinquent. He contends the court erred in finding that he committed an act that, if committed by an adult, would have constituted first-degree sexual misconduct in violation of Section 566.093.1(1), RSMo 2016.[1] D.G.E further argues that the court erred in determining that he had violated his probation by exposing his genitals under circumstances in which he knew such conduct was likely to cause affront or alarm. Lastly, he asserts that he was denied a fundamentally fair hearing and effective assistance of counsel in that his counsel failed to object to several hearsay statements and improper opinion testimony from a lay witness. For reasons explained herein, the judgment of the

---

[1] Unless otherwise noted, all statutory references are to the Revised Statutes of Missouri 2016.

juvenile court is reversed and D.G.E. is ordered discharged from the effects of each disposition.

**FACTUAL AND PROCEDURAL HISTORY**

In March 2019, K.C. received Snapchat messages to her phone from an individual named "NGL." After receiving the initial messages, K.C. asked NGL to identify himself. NGL identified himself as D.G.E., and K.C. told him her name. During the course of this conversation, D.G.E. asked K.C. if she would "send nudes." K.C. told D.G.E. no, and he then asked if it was "okay if he sends [her] some." K.C. again told him no. The conversation ended, but the two resumed speaking the following weekend.

During that second conversation, K.C. sent a photo of her face to D.G.E. and asked him to send her a picture of his face. D.G.E. initially refused, stating "oh, I'm ugly." K.C. indicated, however, that D.G.E. did eventually send a picture of his face "[n]ot like on Snap[chat], but, like from imaging and stuff." K.C. said that she could not see what D.G.E. looked like from the photo because the image was too dark and only showed a portion of his face. D.G.E. then sent another photo that K.C. labeled as a "dick pic," which she later clarified meant a picture of a penis. K.C. stated that, although D.G.E. made no explicit representation of ownership, she believed the photo to be a depiction of D.G.E.'s penis. K.C. asserted that the picture offended her and that she "felt gross" after receiving it.

K.C. told her brother about the photo, and he informed K.C.'s parents. Subsequently, A.B., K.C.'s stepsister, contacted D.G.E. through the Facebook Messenger application. A.B. stated that she contacted him to "figure out who he was and why – and what he did wrong because it was kind of upsetting." A.B. told D.G.E.

2

"that child pornography was illegal and that he probably should not be doing that, especially to someone younger than him." D.G.E. acknowledged "that he did send [a picture of a penis] but it was not his and that it was something that he got online." A.B. stated that she still believed that the penis contained in the photo was D.G.E.'s, however, because "the deal with Snapchat is he sent a live picture, meaning it had to be his and it could not be from his gallery. So that's — that's why I texted him." A.B. conceded that she never saw any of the messages that D.G.E. sent to K.C.

D.G.E. told A.B. that he had apologized to K.C. and "that it was not a big deal." A.B. informed D.G.E. that she "believed otherwise and . . . that my parents were very, very upset and that they were going to press charges against him." D.G.E. then separately contacted both A.B. and K.C.'s stepmother to apologize multiple times "for his actions." During trial, Juvenile Officer Jason Moore read into the record, without objection, a portion of a written statement from A.B. in which she stated, "The next day at school many people told me [D.G.E.] was bragging about sending nudes to my sister, [K.C.]."

After D.G.E. was taken into custody, C.E., D.G.E.'s mother, provided D.G.E.'s phone to Kyle Towles from the Morgan County Sheriff's Office. Towles used the data extraction program Cellebrite to examine the contents of K.C.'s and D.G.E's phones. He stated that he was unable to find any evidence of a Snapchat discussion on either phone. Towles indicated that due to the nature of Snapchat and the age of the phones, he was not surprised that he did not find any evidence of the conversation on K.C.'s phone and was only a "little more surpris[ed]" not to find evidence of the conversation on D.G.E.'s phone.

3

During the examination of D.G.E's phone, however, Towles discovered 18,000 images located in the phone's cache image drive.[2] Towles examined every photo contained within the phone and discovered what he described as "a large quantity of both adult and child pornography." Towles stated that the pornographic images contained "multiple pictures of penises" and that the images he was able to identify as child pornography were saved and entered into evidence as Juvenile Officer's Exhibits 1 through 39.[3] C.E. stated that, at the time of offense, D.G.E. resided in her home along with D.G.E.'s father and her two daughters. C.E. asserted that her older daughter had autism and that she had no reason to believe either daughter was responsible for the pornographic images found on the phone.

At the time of the offense, D.G.E. was serving a probationary term on a previous finding of delinquency, in which the court determined that he had subjected a person to sexual contact without that individual's consent. Consequently, a motion to modify a previous order of disposition was filed, alleging that D.G.E. had: (1) "expos[ed] his genitals, by sending a digital photo image of his penis via Snap Chat [sic] to K.C., under circumstances in which he knew such conduct was likely to cause affront or alarm; and

---

[2] Towles described cache images as:

> Everything you can imagine from what's called cache images. So when you use a website, in order to speed up the next time you visit that website, a computer device — essentially a cell phone is a computer – computer devices save that information on that website to speed the process of using that specific website.

> So if you go to Google a lot, Google will have -- you know, the search bar will be downloaded a hundred times, and each time – each time you open up a website it tries to download that portion of the website so the next time you use it it's quicker. It's like the hyperlinks. Whenever you Google something, if you Googled it before, it turns purple versus blue. That's because it's cached in your computer.

[3] These exhibits are not part of the record before this court. Rule 30.05 requires that exhibits in criminal cases be deposited as provided in Rule 81.16, which obligates the appellant, here D.G.E., to deposit any exhibits necessary for the determination of any point relied on. Rule 30.05; Rule 81.16.

(2) "knowingly possessed, on his cell phone, multiple sexually explicit images of minor children being subjected to sexual contact with adults."

The Juvenile Officer subsequently filed a separate allegation of delinquency alleging that D.G.E. had committed the offenses of first-degree sexual misconduct and possession of child pornography, mirroring the allegations set forth in the motion to modify. The juvenile court heard both cases on the same day and determined shortly thereafter that the first-degree sexual misconduct claim had been proven beyond a reasonable doubt in both the modification and delinquency proceedings.[4] The juvenile court committed D.G.E. to the custody of the Division of Youth Services for an indefinite period of time in both cases. D.G.E. appeals.

## STANDARD OF REVIEW

"Juvenile proceedings are reviewed as in the same manner as other court-tried cases." *D.C.M v. Pemiscot Cty. Juvenile Office*, 578 S.W.3d 776, 786 (Mo. banc. 2019) (citation and quotations omitted). We will, therefore, affirm a judgment in a juvenile proceeding "unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *Ivie v. Smith*, 439 S.W.3d 189, 198-99 (Mo. banc 2014). "The credibility of the witnesses and the weight their testimony should be given is a matter to be determined at the hearing by the circuit court, which is free to believe none, part, or all of their testimony." *Pemiscot Cty.*, 578 S.W.3d at 786 (citation and quotations omitted).

---

[4] For the sake of clarity, the Juvenile Officer did not specifically invoke Section 566.093 in its motion to modify, but the language of the petition plainly tracks the language of the offense of sexual misconduct in the first degree.

5

Where, as here, "a juvenile is alleged to have committed an act that would be a criminal offense if committed by an adult, the standard of proof, like that in criminal trials, is beyond a reasonable doubt." *Id.* Consequently, we must determine "whether there is sufficient evidence from which the fact finder could have found the defendant guilty beyond a reasonable doubt." *J.N.C.B. v. Juvenile Officer*, 403 S.W.3d 120, 124 (Mo. App. 2013). "In determining the sufficiency of the evidence, we view the evidence and reasonable inferences which may be drawn therefrom in the light most favorable to the verdict and we ignore all evidence and inferences to the contrary." *Id.* (citation and quotations omitted).

**ANALYSIS**

In Point I, D.G.E. contends the juvenile court erred in finding that D.G.E. had committed an act that would have been first-degree sexual misconduct if committed by an adult because there was insufficient evidence to prove: (1) that D.G.E. had "exposed" his genitals; and (2) that any genitals depicted in any digital photo exchanged between D.G.E. and K.C were *his genitals*, as required by Section 566.093. As a determination in favor of D.G.E. on either of his allegations of error would require a ruling in favor of D.G.E.,[5] we need only address his second allegation.

In its first amended petition, the Juvenile Officer alleged that D.G.E. had committed the offense of first-degree sexual misconduct in violation of Section 566.093.1(1).[6] That provision provides that an individual commits first-degree sexual

---

[5] The Juvenile Officer has the burden of proving every element of the criminal offense. *In Interest of S.B.A.*, 530 S.W.3d 615, 623 (Mo. App. 2017).

[6] The Juvenile Officer did not specify under which subsection of Section 566.093 it was alleging delinquency, but the language of its petition plainly, and exclusively, tracks Section 566.093.1(1).

6

misconduct if such individual "[e]xposes his or her genitals under circumstances in which he or she knows that his or her conduct is likely to cause affront or alarm[.]" § 566.093.1(1). In this point on appeal, D.G.E. contends there was insufficient evidence to prove that the genitals depicted in any photo exchanged during his conversation with K.C. were *his* genitals.

In support of the Juvenile Officer's petition, the court heard evidence that: D.G.E. had asked K.C. to "send nudes" and later asked her if it was "okay if he sends [her] some." K.C. testified that she believed the photo of the penis she received to be an image of D.G.E.'s penis. A.B. testified that, although she had never seen any of the messages from D.G.E., she believed that the image sent by D.G.E. was a photo of his penis because D.G.E. "sent a live [Snapchat] picture, meaning that it had to be his and it could not be from his [phone's] gallery." A.B. further stated that D.G.E. had apologized to her and her mother many times "for his actions" towards K.C. Juvenile Officer Moore read into the record, without objection, a portion of a written statement from A.B. in which she stated, "The next day at school many people told me [D.G.E.] was bragging about sending nudes to my sister, [K.C.]."

Towles stated that he could not find any evidence of the Snapchat conversation but that the absence of the messages was not surprising due to the nature of Snapchat and the phones used by K.C. and D.G.E. During a search of D.G.E.'s phone, Towles discovered a large quantity of adult and child pornography in the phone's cache. D.G.E's mother, C.E., stated that her two daughters also lived in the home with D.G.E. but that she had no reason to believe that either were responsible for the pornography found on the phone.

7

To support the court's finding of delinquency, the Juvenile Officer directs our attention to *J.N.C.B.*, 403 S.W.3d at 125, as endorsement for the principle that, "[p]roof of conduct before, during or after the offense are circumstances from which one's participation in the offense may be inferred." However, the Juvenile Officer ignores the limitations to such inference, which were explained in great detail by the *J.N.C.B.* court. *See id.* at 126-29.

The participation inference employed by the Juvenile Officer is an example of a permissive inference. *See id.* at 127. "A permissive inference suggests to the [factfinder] a possible conclusion to be drawn if the State proves certain predicate facts, but does not require the [factfinder] to draw that conclusion." *Id.* (alteration in original) (footnote omitted) (citation omitted). The inference at issue here suggests that, in the absence of direct evidence of a defendant's participation, the factfinder *may* infer participation from the conduct the defendant undertakes close in time to the offense. Such inference may be valid, but, "to satisfy due process concerns, there must be a '"rational connection" between the basic facts that the prosecution proved and the ultimate fact presumed, and that the latter is "more likely than not to flow from" the former.'" *Id.* (quoting *Ulster Co. Court v. Allen*, 442 U.S. 140, 142 (1979)).

Here, some rational connection exists between the basic facts proved by the Juvenile Officer and the ultimate fact required by Section 566.093.1(1) — that D.G.E. exposed *his* genitals. The mere existence of a rational connection, however, is not enough. As the court in *J.N.C.B* reiterated, the ultimate fact "must more likely than not to flow from" the basic facts proved by the Juvenile Officer. *Id.* (quoting *Ulster*, 442 U.S. at 142). Distilled to their essence, the basic facts proved by the Juvenile Officer which

8

support the proposition that D.G.E. exposed his genitals are: (1) that he asked for K.C. to provide "nudes"; (2) that he asked if he could send her "some"; (3) that, during a conversation several days later, K.C. received an image of a penis from D.G.E.; (4) that D.G.E. apologized numerous times "for his actions"; and (5) that he was heard bragging at school the following day about sending "nudes" to K.C. The question, therefore, is whether this evidence supports a finding that the ultimate fact — that D.G.E. exposed *his* genitals —is more likely than not to flow from these basic facts.

In support of its contention that the inference is properly invoked, the Juvenile Officer raises a series of arguments that we have grouped into three overarching arguments: (1) that D.G.E. has improperly challenged A.B's testimony about the inner-workings of Snapchat by presenting evidence on appeal that it did not present below; (2) that the juvenile court was not required to believe any of D.G.E.'s testimony; and (3) that D.G.E.'s request that K.C. send and receive nudes, in combination with his actions, consistently supports the use of the inference.

As for the first argument, the Juvenile Officer is correct that D.G.E.'s presentation of pages from Snapchat's website in an attempt to discredit A.B.'s testimony is not properly before this court. D.G.E. did not present those pages, or the information contained therein, to the juvenile court. "We do not convict the trial court of error when it was never given an opportunity to correct such error." *State v. Renfrow*, 495 S.W.3d 840, 843 (Mo. App. 2016). The time for that challenge has passed. If D.G.E. believed that A.B. was incompetent to provide testimony explaining the inner-workings of Snapchat, he could have engaged in a *voir dire* examination of A.B., challenged A.B's testimony on cross-examination, or contemporaneously moved to strike A.B.'s

9

testimony from the record. Because he chose none of these options, A.B.'s testimony is properly before this court. *See id.* Nevertheless, A.B. stated that she did not see any message exchanged between K.C. and D.G.E., which, even under our deferential standard of review, severely limits the probative value of her testimony.

Similarly, the Juvenile Officer's second argument — that the juvenile court was free to disbelieve D.G.E.'s statements maintaining that the penis contained in the image sent to K.C. was not his — accurately summarizes the applicable standard of review. It is well-settled that "[t]he credibility of the witnesses and the weight their testimony should be given is a matter to be determined at the hearing by the circuit court, which is free to believe none, part, or all of their testimony." *Pemiscot Cty.*, 578 S.W.3d at 786 (citation and quotations omitted). The fact that the credibility of witnesses is left to the juvenile court, however, does not allow the court to leverage that disbelief to carry the Juvenile Officer's burden.

As discussed *supra*, the Juvenile Officer carries the burden to prove all elements of Section 566.093.1(1) beyond a reasonable doubt. *Id.* While the court was unquestionably free to disbelieve D.G.E., *see id.*, that disbelief cannot, without other supporting facts, prove beyond a reasonable doubt that the picture sent to K.C. actually depicted D.G.E.'s penis. Put another way, the question before this court is not whether the juvenile court believed D.G.E.'s statements – it plainly did not; instead, the question is whether the remaining facts adduced by the Juvenile Officer support the inference that D.G.E. committed the offense of first-degree sexual misconduct. This is the issue addressed by the Juvenile Officer's third overarching argument.

The Juvenile Officer and the dissenting opinion assert that that the phrase "send nudes" has a particular colloquial meaning in which it functions as a request for nude images *of the person* upon which the request is made. No evidence was presented that D.G.E.'s use of this phrase meant "send *your* nudes." However, the Juvenile Officer and the dissent contend that the evidence was sufficient to support the finding of delinquency because, *inter alia*, D.G.E. necessarily implied that the exposed penis was his by sending a picture of a penis several days after using the phrase "send nudes."

Even if we agreed that the phrase "send nudes" could be understood to mean that an individual "send his or her nudes," the ultimate fact — that D.G.E. exposed *his* genitals — is not more likely than not to flow from that factual basis. Simply, the use of the phrase "send nudes" combined with: (1) K.C. receiving a photo of a penis during a conversation held several days later; (2) D.G.E.'s subsequent bragging about sending nudes; and (3) D.G.E's subsequent apologizing "for his actions," cannot support a finding of the ultimate facts beyond a reasonable doubt. The Juvenile Officer attempts to stretch the inference of participation from temporally-related conduct to also permit the court to infer the facts necessary to prove the extent, nature, and meaning of that participation. This request would require the court to stack too many inferences upon a single proven fact.

The dissent acknowledges that K.C.'s testimony is brief "and may not be a model of precision," but nonetheless relies upon fragmented excerpts to reach the conclusion that D.G.E. is guilty beyond reasonable doubt because he sent an image of *his* penis. However, when understood in the context of the entire line of questioning, there is nothing in K.C.'s testimony that assists in connecting the request to "send nudes" with

11

her receiving the photo days later.  During her testimony, K.C. described the photo as follows:

[JUVENILE OFFICER]: Okay. Then what happened?

[K.C.]: Then I thought he was, like, going to send a picture of his face, but he just, like, did that instead.

[JUVENILE OFFICER]: Okay. And when you say that, I know you're uncomfortable. What did he send you a picture of?

[K.C.]: A dick pic.

[JUVENILE OFFICER]: Okay. A dick pic?

[K.C.]: (Witness nodded.)

[JUVENILE OFFICER]: In biological terms, what is that, picture of what part of the body?

[K.C.]: How am I supposed to explain that? Between his legs.

[JUVENILE OFFICER]: Okay. Have you heard of a penis?

[K.C.]: Yeah.

[JUVENILE OFFICER]: Is that what you're describing, a picture of a penis?

[K.C.]: Yeah.

[JUVENILE OFFICER]: And did he represent to you that that was a picture of him?

[K.C.]: No, not the picture of his face. I thought it was going to be his face, but yeah.

[JUVENILE OFFICER]: But you thought it was a picture of him?

[K.C.]: Yeah.

[JUVENILE OFFICER]: Because he was going to send you a picture of him?

[K.C.]: Well, that's what I thought.

[JUVENILE OFFICER]: Okay. And you were offended by that?

[K.C.]: Yeah. I felt gross.

[JUVENILE OFFICER]: So after that happened, did you tell anyone?

[K.C.]: I told him I was going to tell my brother. He goes, please don't. Then I told my brother anyway. My brother told my parents and my sister called the cops.

[JUVENILE OFFICER]: Were you able to see the person's photo well enough to identify that person?

[K.C.]: No.

It is apparent from a review of the transcript that K.C. was nervous and had difficulty testifying. While the court understands and is sympathetic to those difficulties, our analysis must be guided by the record before this court. The dissenting opinion seizes on two lines of questioning to support its conclusion. The first, being this exchange:

[JUVENILE OFFICER]: And did he represent to you that that was a picture of him?

[K.C.]: No, not the picture of his face. I thought it was going to be his face, but yeah.

The dissenting opinion understands this testimony to be K.C.'s confirmation that D.G.E. had represented to her that the penis in the image was his. Apparently confused by the answer it received, however, the Juvenile Officer asked an immediate follow-up question, in which this exchanged occurred:

[JUVENILE OFFICER]: But you thought it was a picture of him?

[K.C.]: Yeah.

[JUVENILE OFFICER]: Because he was going to send you a picture of him?

13

[K.C.]: Well, that's what I thought.

This collective testimony only establishes the basis for K.C.'s *belief* that D.G.E. sent her an image of his penis. Regardless of whether the belief was reasonable, Section 566.093.1(1) requires proof that D.G.E. exposed his genitals, not that K.C. merely believed he did.

The second line of questioning that the dissenting opinion addresses is this exchange between K.C. and the Juvenile Officer:

> [JUVENILE OFFICER]: In biological terms, what is that, picture of what part of the body?
>
> [K.C.]: How am I supposed to explain that? Between *his* legs.
>
> [JUVENILE OFFICER]: Okay. Have you heard of a penis?
>
> [K.C.]: Yeah.
>
> [JUVENILE OFFICER]: Is that what you're describing, a picture of a penis?
>
> [K.C.]: Yeah.

(Emphasis added). The dissent focuses on K.C.'s use of the pronoun "his" as an expression of her understanding that the image depicted D.G.E's penis. This isolated sentence, however, is unmoored from the larger context. More precisely, K.C.'s use of the "his" pronoun is followed by the first line of testimony discussed *supra*, in which she stated that she *believed* the image depicted D.G.E.'s penis because she thought D.G.E. was going to send a picture of himself. This circular testimony fails to overcome the fundamental lack of proof that D.G.E. actually sent a photo of his own genitals and cannot support a factual finding of guilt beyond a reasonable doubt.

14

Further, the record is bereft of any other supporting connections. For example, the Juvenile Officer did not ask K.C. to describe the penis depicted in the image. Any number of relevant facts concerning the image, such as similarities in the surroundings captured in the photos or between D.G.E.'s outward facing physical characteristics and the characteristics of the penis contained in the image she received (for example, similar skin color) could have provided valid bases for the inference that the penis was, in fact, D.G.E.'s. These do not exist in the record and would have been particularly relevant in light of testimony from A.B. that D.G.E. said the penis "was not his and that it was something that he got online."

Further, A.B. cannot provide the missing link based on her concession that she lacked any personal knowledge about the photo because she never saw the messages exchanged between K.C. and D.G.E.[7] Nothing in the record demonstrates that the ultimate fact — that D.G.E. exposed his genitals — is more likely than not to flow from any of the basic facts established by the Juvenile Officer. Circumstantial evidence can undoubtedly support a conviction beyond a reasonable doubt. *J.N.C.B.*, 403 S.W.3d at 129. Indeed, "[c]ircumstantial evidence alone can be sufficient to support a conviction, and the evidence [presented] need not demonstrate the impossibility of innocence." *State v. Allen*, 508 S.W.3d 181, 186 (Mo. App. 2017). Here, however, the Juvenile Officer has not presented sufficient facts to support a reasonable inference.

This court confronted a similar issue in *State v. Waller*, 163 S.W.3d 593 (Mo. App. 2005). In *Waller*, the State presented evidence that a local sheriff's deputy was

---

[7] A finding that A.B. cannot provide a link between D.G.E. and the photo does not indulge evidence or inference contrary to the juvenile court's verdict. A.B. stated that she never saw the messages exchanged between K.C. and A.B. Therefore, our determination that she cannot provide the necessary link does not consider contrary evidence, it simply restates *the* evidence adduced by the Juvenile Officer.

15

called to investigate a report of trash dumping. 163 S.W.3d at 594. The deputy recovered several trash bags dumped on the side of the road, which contained "a handful" of mail addressed to Gary and April Waller, and their daughter Crystal Waller. *Id.*

Upon investigation, the deputy discovered that the Waller family had been evicted and no longer lived at the address shown on the dumped mail. *Id.* at 594-95. The posting date for the mail preceded the date on which the Wallers were evicted. *Id.* at 595. The Waller family acknowledged leaving trash and debris in the home but denied dumping anything near the roadway. *Id.* Further investigation revealed that a real estate broker was hired to clean and prepare the house for market after the foreclosure. *Id.*

Gary and April Waller were prosecuted for littering, and the circuit court found both guilty beyond a reasonable doubt. *Id.* In reversing the judgment against Gary,[8] we noted that the only evidence of guilt was the mail itself, and therefore "it [was] possible that any one of the three Wallers committed the crime, *or* that any one of them did not commit the crime." *Id.* at 596 (emphasis in original). We acknowledged that Gary "might have committed the crime, and perhaps, even more probably than not, that he did commit the crime." *Id.* We cautioned, "[h]owever, to conclude that Gary committed this crime beyond a reasonable doubt require[d] a healthy dose of speculation, supposition, and conjecture, which [was] not sufficient to provide a basis for a rational resolution of the issue of guilt beyond a reasonable doubt." *Id.*

---

[8] Our ruling in *Waller* only contemplated the sufficiency of the evidence as to Gary Waller because April Waller's challenge was addressed in a separate appeal. *Id.* at 594 n.3.

16

Although D.G.E.'s case does not present an issue of multiple potential perpetrators, it does present this court with at least two potential versions of D.G.E.'s participatory acts – only one of which violates Section 566.093.1(1). Here, as in *Waller*, we can infer from the evidence that D.G.E. might have exposed his genitals, but it "requires a healthy dose of speculation, supposition, and conjecture, which is not sufficient to provide a basis for a rational resolution of the issue of guilt beyond a reasonable doubt." *Id.* Indeed, "[t]he concept of reasonable doubt is inconsistent with a procedure that permits an otherwise unassisted leap from aggregate likelihood to a conclusion of guilt." *J.N.C.B.*, 403 S.W.3d at 129 (quoting Charles R. Nesson, *Reasonable Doubt and Permissible Inferences: The Value of Complexity*, 92 HARV. L. REV. 1187, 1208 (1979)).

Contrary to the dissent's assertion, our finding that the evidence is insufficient to support a determination of guilt beyond a reasonable doubt does not require this court to invoke the now-abrogated "corroboration rule." *See State v. Porter*, 439 S.W.3d 208, 211-13 (Mo. banc 2014). Our ruling does not disturb any factual or credibility determination made by the juvenile court. Instead, we recognize that, even while viewing the evidence in the light most favorable to the juvenile court's ruling and ignoring all contrary evidence, the Juvenile Officer's evidence is simply insufficient. The problem with K.C.'s testimony is not that it appears contradictory, but that it does not provide a factual basis upon which the court could find, or infer, beyond a reasonable doubt that D.G.E. exposed *his* penis. *See J.N.C.B.*, 403 S.W.3d at 124. We acknowledge that our standard of review is deferential, but no court is free to "supply

17

missing evidence or give [the Juvenile Officer] the benefit of unreasonable, speculative or forced inferences." *State v Langdon*, 110 S.W.3d 807, 811-12 (Mo. banc 2003).

While the Juvenile Officer may have established that D.G.E. had furnished a pornographic photo to K.C., knowing that she was a minor, the Juvenile Officer failed to demonstrate beyond a reasonable doubt that D.G.E. exposed *his* genitals. Therefore, the evidence in this case is insufficient to prove an essential element of the offense that if committed by an adult, would constitute first-degree sexual misconduct. Point I is granted.

In Point II, D.G.E. contends that the juvenile court erred in finding that D.G.E. had violated his probation "by exposing his genitals, by sending a digital photo image of his penis via Snap Chat [sic] to K.C., under circumstances in which he knew such conduct was likely to cause affront or alarm." D.G.E. challenges this finding on the same grounds expressed in Point I. As our review of Point II is identical to Point I, Point II is granted for the reasons articulated in Point I.

In Point III, D.G.E. contends that he was provided ineffective assistance of counsel, in that his counsel failed to object to several pieces of testimony regarding the inner-workings of Snapchat and hearsay statements made by D.G.E. We need not reach this question, however, because our holding in D.G.E.'s first two points is dispositive and renders Point III moot.

## CONCLUSION

Because the Juvenile Officer failed to meet its burden of proof, the judgment of the juvenile court is reversed, and D.G.E. is ordered discharged from the effects of each disposition.

18

_____

LISA WHITE HARDWICK, JUDGE

Judge Martin concurs.
Judge Ahuja dissents in separate opinion.



# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

IN THE INTEREST OF: D.G.E.,       )

                    Appellant,  )

                           )   WD82856

v.                          )   (consolidated with WD82857)

                           )

JUVENILE OFFICER,       )   FILED: April 21, 2020

              Respondents.  )

## DISSENTING OPINION

I respectfully dissent. Unlike the majority, I believe the testimony of the victim K.C. is sufficient, standing alone, to support a finding that D.G.E. sent her a picture of *his* penis. The evidence was therefore sufficient to support the circuit court's determination that D.G.E. committed an act which would have constituted the offense of first-degree sexual misconduct if committed by an adult. Because D.G.E.'s other arguments for reversal are meritless, I would affirm the judgment of the circuit court.

Although K.C.'s testimony was brief, multiple aspects of her testimony support the reasonable inference that D.G.E. sent her a picture of *his* penis. K.C. testified that, after D.G.E. identified himself during their first Snapchat conversation,

> then he asked me if I send nudes. I said no. And he's like – later on he asked me if it's okay if he sends me some. I'm like, no.

When D.G.E. asked K.C. on Snapchat if she "send[s] nudes," it certainly is a reasonable inference – and arguably, the *only* plausible inference – that he was

asking her if she sent nudes *of herself.* It is implausible that D.G.E. was asking K.C. if she would share with him nude images which she had acquired on the internet or otherwise. The reasonable understanding of his question is that he was asking her if she would share nude pictures of herself with him. The fact that D.G.E. then asked "if it's okay if he sends me some" must be read in the context of his earlier question. A reasonable inference is that he was proposing to send K.C. nude pictures *of himself.*

The pair corresponded on Snapchat again a few days later. The parties' second Snapchat "conversation" began with them exchanging pictures of themselves. K.C. testified that she sent D.G.E. "a picture of my face," and "[t]hen I asked him to send one of his face, too." K.C. testified that, after some initial hesitation, D.G.E. ultimately sent her a picture of his face, although the picture was dark, and "[t]here was just a light showing a little bit of his face." D.G.E. then "took a picture . . . with his wall."

K.C. testified that "[t]hen I thought he was, . . . going to send a picture of his face, but he just . . . did that instead." K.C. explained that D.G.E. sent her "[a] dick pic." When asked to explain "what part of the body" the picture depicted, K.C. testified, "*[b]etween his legs.*" Clearly reticent, K.C. agreed with counsel that she was describing "a picture of a penis."

The Juvenile Officer's counsel then asked K.C.: "did he represent to you that that was a picture of him?" She responded: "No, not the picture of his face. I thought it was going to be his face, *but yeah.*" K.C. further testified that she "thought it was a picture of him," because she thought "he was going to send [her] a picture of him."[9]

---

[9] Although D.G.E. later claimed that the image he sent to K.C. was downloaded from the internet, it is significant that in her testimony, K.C. was explicit when she or D.G.E. sent an image from a photo archive. Thus, she testified that she sent D.G.E. a picture of her face "from my images," and that, when he responded with a picture of his face, he sent it "[n]ot like on Snap, but . . . from imaging and stuff." K.C. did not describe the penis picture in the same way.

K.C.'s testimony supports the inference that D.G.E. asked her, early in their first conversation, if they could exchange nude pictures of themselves. During a later conversation, after D.G.E. sent her two pictures of himself (one poorly lit, and one "with his wall"), he then sent her a "dick pic" showing what was "between his legs." K.C. testified that D.G.E. represented to her "that that was a picture of him."

While this testimony may be brief, and may not be a model of precision, I fail to see how this evidence would not be sufficient for the circuit court, as fact-finder, to conclude that D.G.E. had sent K.C. a picture of his own penis. K.C. testified that D.G.E. sent her a picture of what was "between his legs," and represented to her that it was a picture of him. This was clearly sufficient evidence to support the circuit court's adjudication that D.G.E. had committed acts constituting first-degree sexual misconduct. No speculation, or forced or unreasonable inferences, are necessary to support the judgment: K.C. testified that D.G.E. sent her a picture of what was "between his legs," and then confirmed that it was a picture of him. It is noteworthy that, in closing arguments, neither D.G.E.'s counsel, nor his parents (who appeared *pro se*), argued that the evidence was insufficient to establish that the picture D.G.E. sent depicted his own body. Instead, counsel argued that, because the Snapchat conversation had not been preserved on either K.C.'s or D.G.E.'s phone, there was insufficient evidence that D.G.E. sent K.C. any pictures at all.

The majority opinion highlights possible uncertainties in K.C.'s testimony, and emphasizes that K.C. failed to provide factual details to support her testimony that the picture D.G.E. sent depicted what was "between his legs." But any vagaries in K.C.'s testimony, or her failure to specify the precise basis on which she concluded that the image was of D.G.E., could have been explored in cross-examination. And ultimately, any lack of precision in K.C.'s testimony was for the fact-finder to weigh – not for *this* Court to seize as a basis to deny K.C.'s testimony

3

any probative value. In *State v. Porter*, 439 S.W.3d 208 (Mo. 2014), the Missouri

Supreme Court recently rejected the "corroboration rule" in sufficiency-of-the-

evidence cases. The "corroboration rule" (which was applied exclusively in sexual-

offense prosecutions) held that, "'when the evidence of [the victim] is of a

contradictory nature or leaves the mind of the court clouded with doubt, [the victim]

must be corroborated, or the judgment cannot be sustained.'" *Id.* at 211 (quoting

*State v. Tevis*, 136 S.W. 339, 341 (Mo. 1911)).

The Supreme Court rejected the "corroboration rule" because the rule is

fundamentally inconsistent with the standard of review appellate courts are

required to apply in judging the sufficiency of the evidence in criminal cases.

> [T]he corroboration rule requires an appellate court to engage in
> credibility determinations that are the province of the trier of fact. To
> apply the corroboration rule, the court must make what amounts to a
> factual determination that the testimony is sufficiently contradictory
> and insufficiently corroborated. By requiring appellate courts to make
> these determinations, the corroboration rule is inconsistent with the
> appropriate standard of review for challenges to the sufficiency of the
> evidence. That standard is premised on the notion that appellate
> courts are not a "super juror" with the power to override factual
> determinations supported by sufficient evidence. Appellate courts
> defer to factual determinations because the trier of fact, whether a
> judge or jury, is "in a better position not only to judge the credibility of
> the witnesses and the persons directly, but also their sincerity and
> character and other trial intangibles which may not be completely
> revealed by the record." The corroboration rule requires appellate
> courts to make factual determinations they are ill-equipped to make.
> Rather than second-guessing the trier of fact, Missouri appellate courts
> simply should abide by the well-established standard of review for
> challenges to the sufficiency of the evidence to support a criminal
> conviction.

*Id.* at 212 (citations omitted).

The majority applies a mode of analysis similar to that used in the now-

discredited "corroboration rule" cases. The majority's review of K.C.'s testimony has

left "'the mind of the court clouded with doubt.'" *Porter*, 439 S.W.3d at 211 (quoting

*Tevis*, 136 S.W. at 341). But whether <u>we</u> have doubts concerning the meaning or

4

credibility of K.C.'s testimony is not the issue; the only question *we* are asked to answer is whether any reasonable fact-finder could have interpreted K.C.'s testimony to establish D.G.E.'s guilt, viewing that evidence in the light most favorable to the court's judgment. *J.N.C.B. v. Juvenile Officer*, 403 S.W.3d 120, 124 (Mo. App. W.D. 2013).

Proper application of these principles is illustrated in *United States v. White Bull*, 646 F.3d 1082 (8th Cir. 2011), in which a defendant in a sex-abuse prosecution argued that the prosecution had failed to prove the he had touched a minor's genitals. The defendant "argue[d] that because [the victim] drew a circle on a gender-neutral figure to indicate what she meant by the terms 'private part' and 'middle,' it was unclear whether she was referring to the 'groin, lower abdomen, anus, vulva, thighs, or some other part of her anatomy.'" *Id.* at 1089. Despite some potential vagueness in the victim's testimony, the appellate court held that the evidence was sufficient to sustain the defendant's conviction. The court emphasized that "[t]he question in a sufficiency-of-the-evidence challenge is not whether a reasonable jury could possibly conceive of an alternative interpretation of the evidence at trial." *Id.* "Instead, we ask whether any reasonable jury could have concluded that this evidence shows that [defendant] touched . . . [the victim's] genitalia." *Id.* (emphasis omitted). In countless cases, this Court has held that evidence was sufficient to support a conviction, even though critical testimony may have been somewhat vague, inconsistent, or reasonably subject to different interpretations.[10]

---

[10]     *See*, *e.g.*, *State v. Hankins,* 531 S.W.3d 77, 81-82 (Mo. App. S.D. 2017) (rejecting the defendant's arguments that there was insufficient evidence to support his conviction because the child-victim's identification of him was inconsistent, and the victim's description of the area of her body which the defendant touched was imprecise); *State v. White*, 466 S.W.3d 682, 691 (Mo. App. E.D. 2015) (rejecting defendant's argument that "that there was insufficient evidence to support his convictions . . . because [the victim's] testimony was vague, contradictory and did not provide specific dates or details"; "Any inconsistencies were for the jury's determination as the fact-finder."); *State v. Jackson*, 439 S.W.3d 276, 279–80 (Mo. App. E.D. 2014) (holding it was for the jury to resolve inconsistencies between victim's trial testimony and out-of-court statements); *State v. Benn*, 341 S.W.3d 203, 211 (Mo. App. W.D. 2011) ("[I]t was reasonable for the jurors to infer that the victim's reference to her

I am concerned that, contrary to our standard of review, the majority has adopted the least charitable and most skeptical possible reading of the victim's testimony. While the majority may have "conceive[d] of an alternative interpretation of the evidence," *White Bull*, 646 F.3d 1089, there was plainly sufficient evidence in this case to support the circuit court's findings.

D.G.E.'s other arguments for reversal are meritless. He argues that his act of sending a picture of his penis to K.C. does not constitute the act of "expos[ing] his . . . genitals" within the meaning of § 566.093.1(1), RSMo 2016, because he and K.C. were not in each other's physical presence. D.G.E. recognizes that, to rule in his favor on this argument, we would have to overrule our prior *en banc* decision in *State v. Bouse*, 150 S.W.3d 326 (Mo. App. W.D. 2004). *Bouse* held that the term "exposes" in a similarly worded statute (§ 566.083, RSMo 2000), did not require that the defendant and the victim be physically present together, but was satisfied by pictures of his penis which the defendant sent to his victim as attachments to an e-mail. In the course of holding that the term "exposes" could apply to the sharing of pictures by electronic means, *Bouse* engaged in an extended discussion of the history of indecent exposure laws in Missouri, concluding that when it enacted a new criminal code in 1979, the legislature intentionally chose to abrogate the common-law requirement that the exposure occur in a public place or in the victim's physical presence. 150 S.W.3d at 332-3. While at least one other jurisdiction has explicitly rejected *Bouse*'s interpretation of the term "exposes,"[11] I see no reason to re-examine *Bouse*, which interpreted a statute which has not been materially amended since the decision issued.

---

'private spot,' or 'bad spot,' coupled with her action of pointing to her genital region between her legs and circling the same area on an anatomical drawing, indicated that [the defendant] licked her genitals.").

[11] *State v. Lopez*, 907 N.W.2d 112, 118-22 (Iowa 2018); *see also State v. Legassie*, 171 A.3d 589, 594-96 (Me. 2017) (concluding that transmission of digital image of defendant's genitals by Facebook messaging did not constitute "exposure").

6

Finally, D.G.E. argues that he received ineffective assistance of counsel, based on his attorney's failure to object to certain testimony by K.C.'s step-sister, A.B. As explained above, however, the circuit court's adjudication is fully sustainable without reference to A.B.'s testimony. D.G.E. has therefore failed to demonstrate that he was prejudiced by his counsel's failure to object to A.B.'s testimony, even if the failure to object was otherwise incompetent.

Alok Ahuja, Judge

7